UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| WESTROCK CP, LLC,<br><br>        Plaintiff,<br><br>  v.<br><br>MING'S RESOURCE CORPORATION,<br><br>        Defendant. | No. 2:22-cv-00176 WBS AC<br><br>ORDER RE: MOTION TO DISMISS COUNTERCLAIMS; ALTERNATIVE MOTION TO SEVER AND TRANSFER VENUE; AND MOTION TO STRIKE |

----oo0oo----

This case involves multiple contractual disputes between plaintiff and counter-defendant WestRock CP, LLC ("WestRock"), and defendant and counterclaimant Ming's Resource Corporation ("MRC"). After being transferred from the United States District Court for the District of Oregon, the matter is before this court on WestRock's motions (1) to dismiss MRC's counterclaims or, alternatively, sever the counterclaims and transfer them to Delaware, and (2) to strike certain affirmative defenses MRC has raised. (Motion to Dismiss or Transfer and to Strike ("Mot.") (Docket No. 19); Docket No. 28.)

1

I.   Factual and Procedural Background[1]

WestRock and MRC are companies engaged in the purchase, processing, and sale of recyclable materials. (Compl. at ¶¶ 4-5 (Docket No. 1); Countercl. at ¶¶ 5, 7 (Docket No. 10).) On June 13, 2016, MRC opened a credit account with WestRock for the purchase of recyclable materials, codified in a Credit Agreement. (Compl. at ¶¶ 6, 10; see Compl., Ex. A (Docket No. 1-1).) From December 14, 2019 to June 23, 2020, MRC purchased recyclable materials from WestRock pursuant to that agreement. (See Compl. at ¶ 10.) WestRock's complaint alleges that MRC failed to pay the balance for those materials, and WestRock filed suit to recover that balance. (Id. at ¶¶ 9-26.)

On December 2, 2019, MRC and WestRock also executed an Asset Purchase Agreement, agreeing that MRC would purchase certain assets from WestRock, including recycling equipment and machinery. (Countercl. at ¶ 7.) A list of these assets was included in a letter distributed by WestRock soliciting purchase of the assets (the "Instruction Letter"), and MRC submitted its bid for purchase in reliance on that list. (Id. at ¶ 12.) When the agreement was executed, the assets were located at a recycling facility operated by WestRock at 4800 Florin-Perkins Road in Sacramento, California. (Id. at ¶ 7.) MRC did not plan to operate that facility, which it understood WestRock intended to close, but rather planned to use the assets at other recycling facilities MRC was already operating. (Id.)

In a related agreement executed on the same day, MRC

---

[1]   The facts described are as alleged in WestRock's complaint and in MRC's counterclaims. (Docket Nos. 1, 10.)

2

1  accepted an assignment of WestRock's lease of the property on
2  Florin-Perkins Road (the "Lease Agreement").  (Id. at ¶ 8.)
3  Pursuant to that agreement, MRC agreed to assume financial
4  responsibility for the lease that then existed between WestRock
5  and the landlord, the Leon and Joan Belshin Family Trust.  (Id.)
6  MRC did not intend to occupy the property indefinitely; rather,
7  MRC accepted the assignment as a convenience to WestRock and to
8  enable MRC to move the purchased assets from the facility to its
9  other recycling locations over time.  (Id.)
10         Around that time, at a meeting between representatives
11 of WestRock and the landlord, the landlord identified several
12 conditions and deferred maintenance items related to the property
13 that the landlord demanded be remediated immediately.  (Id. at
14 ¶ 9.)  The landlord stated that if WestRock did not expressly
15 agree to accept responsibility for these repairs, the landlord
16 would not approve the assignment of WestRock's lease to MRC.
17 (Id.)  WestRock agreed to accept financial responsibility as a
18 condition of the lease assignment.  (Id.)
19         WestRock did not allow MRC to completely inspect the
20 property prior to execution of the Lease Agreement.  (Id. at
21 ¶ 10.)  As a result, at the time MRC executed the agreement, it
22 did not understand the full extent of the needed repairs or the
23 associated costs.  (Id.)  After the agreement was executed, the
24 landlord and MRC each demanded that WestRock complete the
25 repairs, but WestRock refused.  (Id.)  As a result, MRC was
26 forced to complete the repairs at its own expense.  (Id.)
27         In January of 2020, MRC also learned that WestRock had
28 sold some of the assets identified in the Instruction Letter to a

third party.  (Id. at ¶ 11.)  At the time MRC executed the Asset Purchase Agreement, based on the list of assets in the Instruction Letter, MRC believed the agreement provided for the purchase of all assets on that list.  (Id. at ¶ 12.)  Accordingly, at the close of escrow, and pursuant to the agreement, MRC paid WestRock tax reimbursements in an amount based on the full list of assets.  (Id. at ¶ 13.)  In January, however, MRC discovered that, prior to execution of the agreement, WestRock had "surreptitiously provided" via email an updated asset list, which omitted the assets sold to the third party, "in type so small one could not read it."  (Id. at ¶ 14.)  WestRock did not alert MRC to the fact that this modification had been made.  (Id.)

The Credit Agreement includes a forum selection clause, which provides that "[a]ny disputes arising out of" the agreement "shall be subject to the exclusive jurisdiction of a court of competent jurisdiction located in a judicial district where the Seller's manufacturing facility is located."  (Compl., Ex. B at ¶ 15 (Docket No. 1-2 at 7).)  The Asset Purchase Agreement also includes a forum selection clause, which provides:

> [A]ny legal dispute . . . in connection with any matter based upon, arising out of or related to, this agreement or the transactions contemplated herein shall be brought only in, and shall be subject to the exclusive jurisdiction of, the United States District Court for the District of Delaware or, if such court does not have subject matter jurisdiction, then . . . in the state courts of the State of Delaware . . . .

(Countercomplaint, Ex. A, at § 9.09(B) (Docket No. 10 at 40) (capital typeface omitted).)

WestRock brought this action in the District of Oregon,

4

asserting claims based on MRC's alleged failure to pay the balance due under the Credit Agreement.  (Compl.)  WestRock asserted that venue there was proper under the Credit Agreement's forum selection clause because it had a manufacturing facility located within that district and alleged that many of the recyclable goods at issue originated from that facility.  (Id. at ¶ 3.)  MRC filed an answer to the complaint raising several affirmative defenses, arguing, inter alia, that WestRock is indebted to MRC, such that those debts must be offset against any damages awarded to WestRock.  (Answer at 3 (Docket No. 9).)  MRC also asserted counterclaims for breach of contract, negligent misrepresentation, and fraudulent concealment, based on WestRock's alleged failure to deliver all assets listed in the Instruction Letter and refusal to perform the repairs to the property on Florin-Perkins Road.  (See Countercl.)

     MRC moved to transfer venue to this court.  (Docket No. 13.)  WestRock moved to dismiss MRC's counterclaims or, alternatively, to sever them and transfer them to the United States District Court in Delaware, and to strike MRC's affirmative defenses relating to the violations alleged in MRC's counterclaims.  (Mot.)  The District Court in Oregon held that transfer to this court would not violate the Credit Agreement's forum selection clause, concluding that the clause's language limiting suit to "a judicial district where the Seller's manufacturing facility is located" and the fact that WestRock had manufacturing facilities both in Oregon and in this district meant that venue would be satisfied in either court.  (Order at 7-8 (Docket No. 23).)  The court granted MRC's motion and

transferred the case to this court, but it left WestRock's motions to be decided by this court following transfer.  (Id. at 9; Docket Nos. 24-25.)

II. Analysis

    A.    Motions to Dismiss or to Sever and Transfer

        Although WestRock has moved for either dismissal or transfer, it appears to concede that transfer is the more appropriate action where a party has brought a claim in an improper forum, in violation of a valid forum selection clause. In its motion, WestRock states that "the mechanism for seeking enforcement of a forum selection clause appears to be a motion to transfer venue under 28 U.S.C. § 1404(a)."  (Mot. at 6 (citing Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex., 571 U.S. 49, 59 (2013) ("Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of [28 U.S.C.] § 1406(a) or [Federal] Rule [of Civil Procedure] 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a).")).)  The court agrees that this is what the Supreme Court's decision in Atlantic Marine suggests.  See also Atl. Marine, 671 U.S. at 62.  Accordingly, in this order, the court decides only whether transfer -- not dismissal -- is required.

        MRC advances three arguments for why it should not be bound by the forum selection clause's requirement that claims "based upon, arising out of[,] or related to" the Asset Purchase Agreement be brought in Delaware: (1) equitable considerations weigh against enforcement of the clause; (2) the counterclaims are compulsory and thus should be tried in the same forum as

6

WestRock's claims; and (3) WestRock waived its right to enforce the clause by bringing its claims in Oregon.  (See Opp. (Docket No. 21).)  The court will address each argument in turn.[2]

### 1. Enforceability of Forum Selection Clause

Ordinarily, where there is no forum selection clause, "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"  Atl. Marine, 571 U.S. at 62-63 (quoting 28 U.S.C. § 1404(a)); see Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002).  "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'"  Atl. Marine, 571 U.S. at 63 (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988)).

Under such circumstances, "a court must deem all factors relating to the private interests of the parties (such as

---

[2] MRC's counterclaims pertain not only to the Asset Purchase Agreement, but also to the Lease Agreement.  (See Countercl.)  Unlike the Asset Purchase Agreement, the Lease Agreement does not appear to contain a forum selection clause.  (See id., Ex. B (Docket No. 10 at 44-47).)  However, MRC has not argued that its claims relating to the Lease Agreement are not also "based upon, arising out of[,] or related to" the Asset Purchase Agreement -- such that the forum selection clause would not apply to those claims -- presumably because MRC contends it assented to the lease assignment as part of the Asset Purchase Agreement negotiations and to help facilitate execution of the Asset Purchase Agreement.  (See id. at ¶ 8, Ex. A; Opp. at 8-9; Mot. to Transfer Venue at 5-6, 10-11.)  Moreover, two of MRC's three counterclaims are explicitly premised upon both the Asset Purchase Agreement and the Lease Agreement.  (See Counterclaim at ¶¶ 18-23.)  Accordingly, if the Asset Purchase Agreement's forum selection clause must be enforced, it applies to all three counterclaims.

1  the 'relative ease of access to sources of proof; availability of
2  compulsory process for attendance of unwilling, and the cost of
3  obtaining attendance of willing, witnesses; possibility of view
4  of premises, if view would be appropriate to the action; and all
5  other practical problems that make trial of a case easy,
6  expeditious and inexpensive') as weighing 'entirely in favor of
7  the preselected forum.'" Yei A. Sun v. Advanced China
8  Healthcare, Inc., 901 F.3d 1081, 1087-88 (9th Cir. 2018) (quoting
9  Atl. Marine, 571 U.S. at 64, 62 n.6).  Consequently, where there
10 is a valid forum selection clause, "a district court should
11 ordinarily transfer the case to the forum specified in that
12 clause," and a motion to enforce the clause should be denied
13 "[o]nly under extraordinary circumstances unrelated to the
14 convenience of the parties." Atl. Marine, 571 U.S. at 62.
15         A party seeking to avoid enforcement of a valid forum
16 selection clause "must bear the burden of showing why the court
17 should not transfer the case to the forum to which the parties
18 agreed." Id. at 64.  This may be shown via "factors relating to
19 the public interest (such as 'the administrative difficulties
20 flowing from court congestion; the local interest in having
21 localized controversies decided at home; [and] the interest in
22 having the trial of a diversity case in a forum that is at home
23 with the law,'" but these "will rarely defeat a transfer motion."
24 Yei A. Sun, 901 F.3d at 1088 (quoting Atl. Marine, 571 U.S. at
25 64, 62 n.6) (alteration in original).  Otherwise, the clause is
26 controlling unless the party resisting enforcement makes "a
27 strong showing that: (1) the clause is invalid due to 'fraud or
28 overreaching,' (2) 'enforcement would contravene a strong public

8

policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'" Id. (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 18 (1972)) (alteration in original).

MRC does not argue that the Asset Purchase Agreement's forum selection clause is invalid based on fraud or overreaching or that enforcement would contravene a strong public policy of this district. (See Opp. (Docket No. 21); Docket No. 29.)  It does, however, argue that enforcement would create piecemeal litigation, result in the waste of the parties' and the court's resources, and impose great hardship on the principal witnesses in this case by requiring them to travel to Delaware. (Opp. at 5.)  It contends that these are "the type of extraordinary circumstance[s] warranting deviation from automatic enforcement of the Delaware forum selection clause" contained in the agreement. (Id. at 17 (citing Atl. Marine, 571 U.S. 49).)

As explained, however, "factors relating to the private interests of the parties" cannot defeat enforcement of a valid forum selection clause unless they are so substantial that the party resisting enforcement would be functionally deprived of its ability to try the case at all. See Yei A. Sun, 901 F.3d at 1087-88; see also id. at 1092 ("[U]nder Atlantic Marine, courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiff[ ] no remedies whatsoever.") (citation omitted).  MRC has not contended, nor offered evidence to show, that it will be unable to litigate its counterclaims if

1  they are transferred to Delaware.  Compare Spradlin v. Lear
2  Siegler Mgmt. Servs. Co., 926 F.2d 865, 868-69 (9th Cir. 1991)
3  (enforcing forum selection clause restricting venue to Saudi
4  Arabia based on plaintiff's "failure to come forward . . . with
5  anything beyond the most general and conclusory allegations of
6  fraud and inconvenience"), and Argueta v. Banco Mexicano, S.A.,
7  87 F.3d 320, 326-27 (9th Cir. 1996) (enforcing clause restricting
8  venue to Mexico, notwithstanding fact that defendant had
9  previously had plaintiff imprisoned there, on ground that
10 plaintiff had not submitted admissible evidence showing his
11 concerns that he would experience subsequent harassment or
12 persecution if he returned to Mexico were more than speculative),
13 with Murphy v. Schneider Nat'l, Inc., 32 F.3d 1133, 1142-43 (9th
14 Cir. 2004) (ordering evidentiary hearing on clause's
15 enforceability where plaintiff submitted affidavit stating his
16 financial condition precluded him from flying to forum state and
17 was unable to drive there due to disability, such that
18 enforcement might "effectively preclude [his] day in court"), and
19 Petersen v. Boeing Co., 715 F.3d 276, 280-82 (9th Cir. 2013)
20 (district court erred by declining to at least hold evidentiary
21 hearing on whether enforcement of clause restricting venue to
22 Saudi Arabia would "effectively preclude [plaintiff's] day in
23 court" where plaintiff stated in sworn affidavit that he lacked
24 resources to litigate there, where he could not obtain a visa to
25 travel there, and where forum country prohibited "[p]ersons
26 involved in legal cases . . . [from] leav[ing] the Kingdom until
27
28

the case has been resolved") (citations omitted).[3]

Accordingly, MRC has not shown that "extraordinary circumstances unrelated to the convenience of the parties" justify non-enforcement of the Asset Purchase Agreement's forum selection clause. See Atl. Marine, 571 U.S. at 62.

2. Compulsory Counterclaims

MRC also argues that its counterclaims should not be severed and transferred because the counterclaims are compulsory, rather than permissive. (See Opp. at 12-16 (citing Fed. R. Civ. P. 13(a)).) However, even assuming that MRC's counterclaims are in fact compulsory, MRC provides no authority establishing that the counterclaims cannot be severed and transferred to another venue based on a valid forum selection clause. (See id.)

A "compulsory" counterclaim is not truly compulsory, but rather is simply "brought when a party wants to avoid the defense of preclusion." Mil-Ray, 2021 WL 2903224, at *9 (citing Publicis Comm. v. True N. Comms., Inc., 132 F.3d 363, 365 (7th

---

[3] MRC's motion to transfer venue, which is heavily referenced in MRC's opposition to the instant motion, includes a declaration from Kevin Luong, MRC's Chief Financial Officer. (Docket No. 13-2.) In his declaration, Luong states that litigating MRC's counterclaims outside of this district "would be extremely difficult" given that the equipment at issue, the lease premises at issue, and many witnesses are located in Sacramento. (Id. at ¶¶ 9-11.) While this may indeed make litigation in Delaware inconvenient, Luong's averments are not enough to show that enforcement of the forum selection clause would cause MRC to "for all practical purposes be deprived of [its] day in court." Yei A. Sun, 901 F.3d at 1088. This is a high bar to meet, and precedent demonstrates that even significant inconvenience and expense is insufficient if it is still possible for the party resisting enforcement to litigate the case in the designated forum. See Spradlin, 926 F.2d at 868-69; Argueta, 87 F.3d at 326-27; Murphy, 32 F.3d at 1142-43; Petersen, 715 F.3d at 280-81.

Cir. 1997)). While the Ninth Circuit does not appear to have addressed this point directly, as the Seventh Circuit has explained, "[p]reclusion is an affirmative defense, and like other legal affairs is subject to contractual adjustment by the parties," including via forum selection clauses. Publicis, 132 F.3d at 366. Although in agreeing to a forum selection clause restricting venue to Delaware a party might not "in so many words promise not to invoke the defense of preclusion in Delaware, . . . any forum selection clause has this effect." Id.

In other words, "[i]f the parties promise to litigate a dispute only in a particular forum, a party to the contract cannot seek to bar the litigation in that forum because the claim was not presented in some other forum." Id. The court noted that this principle is supported by Ninth Circuit precedent holding that "a dispute covered by a contract's arbitration clause need not -- indeed, may not -- be asserted as a compulsory counterclaim in litigation," given that "[a]n arbitration clause is just a particular kind of forum-selection clause." Id. (citing Elec. Workers Loc. No. 11 v. G.P. Thompson Elec., Inc., 363 F.2d 181 (9th Cir. 1966)) (other citations omitted).

Applying this reasoning, district courts nationwide have transferred counterclaims that were subject to a forum selection clause, even where the counterclaims were assumed to be compulsory under Rule 13(a). See Mil-Ray, 2021 WL 2903224, at *9-10 (collecting cases); see also TMF Tr. Ltd. v. M/T Megacore Philomena, 17-cv-9010 AGR, 2020 WL 3064447, at *3 (C.D. Cal. Mar. 24, 2020) (applying Publicis and enforcing forum selection clause). Therefore, whether MRC's counterclaims are in fact

12

compulsory does not affect the enforceability of the Asset Purchase Agreement's forum selection clause.

### 3. Waiver

Finally, MRC argues that WestRock waived its right to seek enforcement of the Asset Purchase Agreement's forum selection clause by bringing its Credit Agreement claims in Oregon.  (Opp. at 16-21.)  However, MRC fails to acknowledge that its counterclaims arise under agreements distinct from the one upon which WestRock's claims are based.  (See id.)  Instead, MRC contends that "WestRock is well aware that the recyclables equipment/transactions deriving from the Asset Purchase Agreement are squarely implicated in its Complaint against [MRC] seeking to . . . resolve its purported account stated/accounting claims involving recyclable goods/services."  (Id. at 18).  In other words, MRC contends that its counterclaims are so closely related to WestRock's claims that if WestRock wanted to litigate them in Delaware, WestRock was required to bring its own claims there in the first place.  (See id. at 16-21.)

MRC offers no authority supporting the proposition that, where companies are both party to two contracts, each containing different forum selection clauses, a party suing under the first contract, in a forum designated by that contract, forfeits the ability to enforce the second contract's forum selection clause as to counterclaims the other party might bring under the second contract.  Although MRC presents the contracts as being "inextricably intertwined" by framing all of the parties' disputes arising under the contracts as "cumulatively deriv[ing] from the recyclable business based

13

transactions/dealings between WestRock and [MRC]," (id. at 17), this argument is unavailing because MRC has not shown that WestRock's original claims are "based upon, arising out of[,] or related to" the Asset Purchase Agreement, as would be necessary to support its waiver argument.

The Delaware forum selection clause applies to MRC's counterclaims and is enforceable. Accordingly, WestRock's motion to sever the counterclaims and transfer them to the United States District Court for the District of Delaware will be granted.

B.  Motion to Strike

WestRock also moves to strike the affirmative defenses contained in MRC's answer "that are subject to the [Asset Purchase Agreement]'s forum selection clause." (Mot. at 11.) It identifies only MRC's offset defense as arising out of and relating to the Asset Purchase Agreement. (See id.)

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Although the basis for MRC's offset defense is not stated in its Answer, (see Answer at 3), in its opposition MRC states that the defense is intended to enable it to calculate the amount due from WestRock, "to be charged against any alleged monies due" based on WestRock's claims, (Opp. at 22). MRC has given no indication that it seeks to set off any judgment against it based on any debts or liabilities other than those that are the subject of its counterclaims.

It is thus apparent that the funds MRC seeks to recover from WestRock under its offset affirmative defense, as well as

14

the basis for such recovery, are wholly identical to those it seeks to recover under its counterclaims.  See Sliger v. Prospect Mortg., LLC, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011) (Karlton, J.) ("Redundant matter is defined as allegations that 'constitute a needless repetition of other averments . . . .'") (quoting Thornton v. Solutionone Cleaning Concepts, Inc., 06-cv-1455 AWI SMS, 2007 WL 210586, at *1 (E.D. Cal. Jan. 26, 2007)).  Accordingly, the court concludes that this affirmative defense is redundant of the counterclaims, which the court has stated will be transferred to Delaware, and will therefore be stricken.

IT IS THEREFORE ORDERED that WestRock's motion to sever MRC's counterclaims and transfer them to the District of Delaware (Docket No. 19) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that WestRock's motion to strike MRC's offset affirmative defense (Docket No. 19) be, and the same hereby is, GRANTED.

Dated:  April 20, 2022

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

15